UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 09-21531-MORENO/TORRES

CARL WOLF,

    Plaintiff,

vs.

PACIFIC NATIONAL BANK N.A.,
d/b/a Pacific National Bank,

    Defendant.
_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiff, CARL WOLF (hereinafter "Wolf" or "Plaintiff"), by and through the undersigned counsel, hereby files the above-referenced Response and Memorandum of Law and states as follows:

1. Wolf should not be required to pay for the costs of Pacific National Bank's (PNB) defense in this case. PNB seeks to have this Court require Wolf to pay a portion of its attorney's fees expended at the state court level so that PNB can re-assert the same arguments for the dismissal of this case that were already rejected by the state court. The state court rejected the arguments raised in PNB's motion to dismiss and never dismissed any claim in this matter with prejudice. PNB claims that it should be paid its fees only for work that would be of no use in these proceedings. Given the circumstances, there is no portion of PNB's fees that was generated for work that would be of no value to PNB in these proceedings.

2. PNB has not alleged or demonstrated any bad faith on the part of Wolf; nor is there any evidence of bad faith whatsoever.

3. Wolf was forced to voluntarily dismiss the state court action at the

beginning stage of litigation and proceed to federal court in order to join federal claims that could not be brought in state court.

4. Wolf's original Complaint was amended to exclude a few sentences that contained information that is confidential, pursuant to federal regulations. PNB filed a motion to dismiss the Amended Complaint. The state court rejected PNB's argument to dismiss any of the counts with prejudice. The state court dismissed the Amended Complaint, with leave to amend. Wolf's Complaint was then amended to include additional information about the role that PNB's most powerful board member, Andres Baquerizo, had in PNB. This was done in response to the state court's questions about the role that Baquerizo had in the operations of PNB. PNB then filed a motion to dismiss the second amended complaint, raising the same arguments that had been previously rejected by the court. During the preparation for the second hearing, Wolf discovered that there were additional separate federal causes of action, over which the state court had no jurisdiction that should be included in the Complaint. Wolf's only recourse was to dismiss the state court Complaint and then file a Complaint in federal court, the only proper forum for the federal claims. Wolf's only other choice would have been to have two lawsuits going at once – one in federal court and another in state court.

5. Wolf propounded written discovery requests upon PNB at the state court level. PNB objected to every one of Wolf's discovery requests. PNB has never produced a single document to Wolf. PNB has never even articulated its reasons for terminating Wolf at any time.

6. Rule 41 does not provide for the recovery of attorney's fees as costs.

7. The Florida Whistleblower Act (FWA) does not define costs as including attorney's fees.

8. An award of attorney's fees is not appropriate in light of the policies set forth in *Christianburg*, and its progeny.

9. The imposition of fees would be a windfall to PNB since PNB has used its previous arguments in the motion to dismiss pending before this Court. PNB's current motion to dismiss contains the same arguments raised at the state court

level, none of which led to a dismissal on the merits, as PNB has urged this Court to enter. Thus, should the Court award attorney's fees, Wolf would be forced to pay some of the attorney's fees for PNB's defense of Wolf's claim in this Court.

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that the Court deny PNB's Motion for Attorney's Fees. Wolf does not oppose PNB's request for reasonable costs, not including attorney's fees.

## MEMORANDUM OF LAW

### SUMMARY OF WOLF'S COMPLAINT

Wolf's Complaint under the FWA, 12 U.S.C. § 1831j and 31 U.S.C. § 5328, stems from directives that he received from one of PNB's directors, and its most powerful board member, Andres Baquerizo. Baquerizo instructed Wolf to pay him a salary in secret and to allow officials from outside of PNB unfettered access to PNB's conference rooms. Baquerizo ultimately instructed Wolf to hire a convicted felon and embezzler, an individual who had a hand in the demise of the Ecuadorian banking system years ago. Wolf was especially careful not to abide by these directives since PNB was operating under a Consent Decree with the Office of the Comptroller of Currency. It is apparent, based on Baquerizo's close relationship to the top leadership of the Ecuadorian government, and his comments to Wolf, that his directives evinced an intent to return to an old way of doing business, a way of doing of business that had ultimately led to the collapse of the Ecuadorian banking system in the 1990s. Wolf's complaints ultimately led the bank to contact federal banking authorities and Wolf was fired a result.

Wolf first started working for PNB as its Chief Financial Officer starting in December 2005. (Pl. Comp. ¶ 17). PNB later promoted Wolf to the position of President. *Id.* On or about March 28, 2008, PNB promoted Wolf to the position of Chief Executive Officer (CEO) and awarded Wolf a substantial raise of sixty-five thousand dollars ($65,000) and one hundred thousand dollar ($100,000) bonus in recognition of his excellent performance, professionalism and conduct at PNB. (Pl. Comp. ¶ 26 ).

After showering PNB will all of these accolades in late March 2008, PNB made an about face and terminated Wolf less than two (2) months later. (Pl. Comp. ¶¶ 51-52). In the weeks after Wolf's promotion, one of PNB's directors, Andres Baquerizo, asked Wolf to surreptitiously pay him an additional eight thousand dollars ($8,000) per month and to improperly and illegally make use of PNB's conference rooms. (Pl. Comp. ¶¶ 30, 35). Baquerizo sent Wolf several e-mails urging him (Wolf) to find a way to funnel money to him.(Pl. Comp. ¶ 32).

Baquerizo was PNB's most powerful board member and was directly influenced by the leadership of the Ecuadorian government due to his position with PNB's parent bank. Baquerizo was the President of Banco del Pacifico (BPE). (Pl. Comp. ¶¶8, 9). BPE owned more than 99% of the shares of PNB. *Id.* BPE was wholly owned by BCE, also known as the Ecuadorian central bank. (Pl. Comp. ¶ 8). BCE was under the direct control of the Ecuadorian government. *Id.*

Baquerizo had taken over the management of PNB's parent bank, BPE, after the election of a new President of Ecuador prompted outside contractors from Spain who had been hired in 2001 to clean up the Ecuadorian banking system left in December 2007. (Pl. Com. § 11-15, 21).

Baquerizo urged Wolf to hire an infamous embezzler and convicted Ecuadorian felon (Wilfredo Guillen) and proposed an illegal scheme to do so. (Pl. Compl. ¶ 42). When Wolf objected, Baquerizo threatened Wolf by stating that if he (Baquerizo) were to leave, others would not be as "understanding" as he (Baquerizo) had been. *Id.* Baquerizo told Wolf that he was under tremendous presume from government officials in Ecuador to have PNB hire Guillen. (Pl. Com. § 42).

Baquerizo attended all board meetings and took an active role in such meetings. (Pl. Comp. ¶ 26). Baquerizo, acting on the directive of a board member of BCE, Pedro Compana, also directed Wolf to reinstate questionable accounts that Wolf had ordered be closed about one year before. (Pl. Comp. §§ 37-38). Wolf also learned that Baquerizo forwarded an e-mail from Compana to PNB in which Compana threatened to fire PNB's entire management team unless this course of action was agreed upon. (Pl. Comp. ¶¶ 40-41). Wolf opposed this plan and refused

to participate in it. . (Pl. Comp. ¶¶ 39).

Shortly after, Wolf complained about this illegal activity in an e-mail to PNB's board of directors. (Pl. Comp. ¶ 43). [1] Wolf also informed the Board of Baquerizo's directives in that same e-mail. *Id.* Wolf also contacted PNB's Compliance Department and that department filed a formal written complaint with the appropriate federal agency based on Wolf's protestations of illegal activity. (Pl. Comp. ¶¶ 44-45). Wolf was fired a short time later as a result. (Pl. Comp. ¶¶ 50, 54-55).

PNB fired Wolf in May 2008 after he refused to capitulate to PNB's directives for him to engage in these illegal activities and because of the complaint filed with federal authorities that was prompted by Wolf's complaints. *Id.* PNB did not pay Wolf any severance at all despite the fact that prior to the time of his termination, PNB had promised Wolf employment an agreement which was to include the payment of a generous severance payment of two years' salary in addition to bonuses. (Pl. Comp. § 48). [2]

Wolf was especially vigilant to prevent PNB from surrendering to the wishes of Baquerizo because PNB was and is under a Consent Decree entered into with the Office of the Comptroller of Currency (OCC). (Pl. Comp. § 38). The Consent Decree specifically prohibits PNB, by reference to specific federal regulations, from taking some of the actions urged by Baquerizo. (Pl. Comp. § Ex. 3). In addition, the violation of the Consent Decree would have itself comprised a separate violation of federal law. 12 U.S.C. § 1818.

### Course of proceedings in state court.

---

[1] PNB's counsel in this case assisted Wolf in the preparation of Wolf's memo to the board in which Wolf outlined his protestations regarding Baquerizo's directive to hire Guillen. (Pl. Com. § 43). That information was later transmitted to PNB's compliance department and others outside of PNB. (Pl. Com. § 43-45).

[2] PNB's counsel had assisted Wolf with the contract negotiations. (Pl. Com. § 43). Wolf has not yet determined whether PNB's counsel should be a necessary witness(es) in this proceeding and expects to obtain additional information on this issue through the course of discovery.

On October 29, 2008, Wolf filed a lawsuit in state court alleging violations of the Florida Whistleblower Act (FWA), Fla. Stat. § 448.102. (Ex. A).[3] The Complaint was amended eight (8) days later. *Id.* On November 24, 2008, PNB filed a motion to dismiss the Amended Complaint. PNB requested that confidential information be redacted from the original Complaint based on 12 C.F.R. § 563.180. As a result, Wolf prepared and filed a motion to place the original complaint under seal. The parties entered into an agreed Order to place the original Complaint under seal. No hearing was held on the issue.

On February 9, 2009, the Court granted PNB's Motion to Dismiss the Amended Complaint with leave to amend after a hearing was held on the motion. (Ex. A). No other hearings were held at the state court level. Wolf then filed a Second Amended Complaint. (Ex. B). The most significant difference between the Amended Complaint and the Second Amended Complaint is that there is a great deal more information about Andres Baquerizo's role in the management and operations of PNB.[4] PNB filed another Motion to Dismiss, making essentially the same arguments as the first Motion to Dismiss. (Exs. C, D). PNB has recycled these same arguments in the Motion to Dismiss that is presently pending before this Court. *Id.* On May 7, 2009, which was the same day that a hearing was to be held on the Motion, Wolf took a voluntary dismissal and re-filed in federal court under seal on May 15, 2009. On May 20, 2009, this Court dismissed that complaint, stating that the Court had never given permission to Wolf to file the matter under seal. Wolf removed the confidential material and filed the instant matter on June 8, 2009.

---

[3] The exhibits to Wolf's Motion will be filed in a separate filing.

[4] Although it is impossible to know the reasons why the state court judge dismissed with leave to amend, Wolf contends the primary reason was that the Complaint should contain more information about the role that Andres Baquerizo had in PNB's management. Baquerizo was and is a director of PNB and was its most powerful board member during the time of Wolf's employ with PNB, although he was not technically an employee of PNB.

### The state course case was at the beginning stages, contrary to the representations of PNB.

As may be gleaned from the foregoing, this case has been at the beginning stages of litigation for quite some time. No depositions were ever conducted in the state court action. Wolf propounded interrogatories, requests for production and admission upon PNB. However, PNB objected to each and every one of Wolf's discovery requests and never provided any documents to Wolf. (Ex. E). PNB never filed any answer or affirmative defenses. In fact, to this day, PNB has never told either the undersigned or Wolf the reasons that it contends Wolf was terminated from the employ of PNB.

### Rule 41 does not provide for the recovery of attorney's fees.

Rule 41 states as follows:

> **"(d) Costs of Previously-Dismissed Action. If** a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the actions until the plaintiff has complied with the order."

The Supreme Court has never had occasion to decide the issue of whether "costs" as mentioned in Rule 41(d) should include attorney's fees. However, the Supreme Court has made its viewpoint known on the issue of when to award costs when costs are not clearly defined by statute. There are three (3) cases that are instructive on the issue.

In *Alyeska Pipeline Service Co. v. The Wilderness Society*, 421 U.S. 240 (1975), the plaintiff-environmental groups sought attorney's fees after they obtained an injunction against the issuance of permits to build an oil pipeline and claimed that they were acting as a "private attorney general." The Court of Appeals agreed with this reasoning and awarded attorney's fees to be paid by the defendant pipeline company. The *Alyeska,* Court reversed and observed that under "the American Rule" no attorney's fees are awarded to the prevailing party in civil lawsuits. *Id.* at 247. The Court also noted that there is an exception to the

American Rule when Congress has passed a statute expressly authorizing the award of attorney's fees. *Id.* at 244-45. However, the Court declined to create another exception to the rule for plaintiffs vindicating a statutory right, because the creation of such a right would usurp congressional authority. *Id.* at 269-71.

In *Key Tronic Corp. v. U.S.*, 511 U.S. 809, 814-15 (1994), the Supreme Court noted that attorney's fees generally are not a recoverable cost of litigation "absent explicit congressional authorization." *Id.* (full citation omitted). The *Key Tronic,* Court considered whether attorney's fees were included in the term "costs of response" as used in § 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). The Court initially noted that neither § 107 (liabilities and defenses) nor § 113 (contribution claims) "expressly mention[ed] the recovery of attorney's fees." *Id.* The Court made clear that there was no requirement that the statute specifically refer to attorney's fees. *Id.* The *Alyeska*, Court also found that award of fees may be authorized, even if not expressly provided for, "if the statute otherwise evinces an intent to provide for such fees." *Id.*

The *Key Tronic* Court then analyzed whether the term "necessary costs of response" in § 107 included attorney's fees. The Court held that § 107 did not authorize an award of attorney's fees for three reasons. First, § 107 did not expressly authorize private suits for contribution from other potentially responsible parties. *Id.* at 815-16. Although the statute impliedly authorized private suits against third parties, the Court refused to read into the section a provision allowing the recovery of attorney's fees. Second, the Court noted that Congress included two express provisions for the recovery of attorney's fees in amendments to the CERCLA statute, without including a similar provision in § 107 or § 113, which authorizes contribution claims. *Id.* at 818. The Court stated: "These omissions strongly suggest a deliberate decision not to authorize such awards." *Id.* at 818-19. Third, the Court believed that the phrase "enforcement activities" could not be read to encompass an award of attorney's fees absent more explicit statutory guidance. *Id.* at 820.

In *Marek v. Chesny*, 473 U.S. 1 (1985), the Supreme Court analyzed whether Rule 68 of the Federal Rules of Civil Procedure authorized an award of attorney's fees in a civil rights case. In *Marek*, the plaintiff received less at trial than was offered through a Rule 68 offer of judgment.

After noting that Rule 68 did not define the term "costs," the Court reasoned that the omission of "attorney's fees" within the definition of "costs" was intentional and therefore concluded that the term "costs" referred to those amounts that could be awarded pursuant to the underlying substantive statute, in light of many statutes mentioned in the Advisory Committee Notes to Rule 54(d) that specifically include attorney's fees as a part of costs. *Id.* at 9. Consequently, the Court held that because the statute governing the litigation, 42 US.C. § 1988, defined "costs" to include attorney's fees, attorney's fees were subject to the cost-shifting provision of Rule 68. The *Marek decision* made clear that the recovery of costs depended on the underlying statute. Thus the term "costs" in Rule 68 does not by itself authorize an award of attorney's fees.

The clear import of these three cases, *Alyeska Pipeline, Key Tronic,* and *Marek*, is that attorney's fees may not be awarded unless there is a clear provision providing for such, or at least that the statute at issue defines costs as fees. There should be no recovery for attorney's fees absent a contract, or clear Congressional intent allowing fees, or at least a statute defining costs as including attorney's fees.

There are several Federal Rules of Civil Procedure which specifically provide for the recovery of attorney's fees. *See,* Fed. R. Civ. P. 30(g)(2), 37(a)(4), 37(b), 37(c), 56(g). Congress' omission in failing to include a fees provision in Rule 41(d), unlike in these other rules, strongly suggests an intent to not include attorney's fees as part of costs for purposes of Rule 41(d). *Simeone v. First Bank National Association*, 125 F.R.D. 150, 153 (D. Minn. 1989), *Lawson v. Toney*, 169 F. Supp. 2d 456,466 (D.NC.2001) (stating that because the plain language of Rule 41 does not explicitly provide for attorneys' fees, costs does not include attorneys' fees.); *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir.2000) (holding that Rule 41(d) does not include attorneys' fees because the rule does not explicitly provide for them.).

Congress excluded any mention of attorneys' fees in the text of the rule. It has been held that such an omission bears significantly on whether the award of such fees was intended. *Marek v. Chesney*, 473 U.S. 1, 8-9, (1985).

Fees should not be awarded every time an action is re-filed as, PNB seems to contend. Instead, the objective is to give effect to the congressional intent of the rule. By the specific omission of attorneys' fees from Rule 41(d), it is clear that they are not to be included within the definition of costs. Additionally, 28 U.S.C. § 1920 lists the items a court may tax as "costs" to a prevailing party under Rule 54(d) but this list fails to include attorneys' fees. The failure to explicitly provide for attorneys' fees in Rule 41(d) while other rules clearly so provide, combined with the non-inclusion of attorneys' fees under § 1920, indicates that Congress does not consider attorneys' fees to be an award of "costs". *Rogers,* 230 F.3d at 875. In addition, the FWA does not define costs as including attorney's fees. [5]

Some courts have either failed to account for or have misconstrued the foregoing Supreme Court decisions when deciding that fees should be awarded under Rule 41 (d) in an effort to better effectuate the purposes of Rule 41. [6]

For instance, in *Cadle Co. v. Beury*, 242 F.R.D. 695 (S.D. Ga 2007), the district court found that costs could sometimes be meant to include attorney's fees because another rule, Rule 54(b), specifically differentiates "costs other than attorney's fees" from "costs." *Cadle Co.,* 242 F.R.D. at 698. The *Cadle Co.,* court reasoned that the Rule drafters must have meant for costs to include attorney's fees

---

[5]   Florida statute § 448.104 states that "A court may award reasonable attorney's fees, court costs, and expenses to the prevailing party."

[6]   There are three schools of thought on the issue of whether Rule 41(d) provides for the recovery of attorney's fees. It seems that a majority of the cases have found that the Rule does provide for fees. *See, e.g., Evans v. Safeway Stores, Inc.,* 623 F.2d 121 (8th Cir. 1980). Other courts have held that the plain language of Rule 41(d) does not provide for fees. *See, e.g., Rogers v. Wal-Mart Stores, Inc.,* 230 F.3d 868, 874 (6th Cir. 2000). Finally, the Seventh Circuit has held that attorney's fees are not available unless the underlying cause of action authorizes attorney's fees. *See, e.g., Esposito v. Piatrowski,* 223 F. 3d 497, 501 (7th Cir. 2000)(extending the *Marek,* holding to Rule 41(d).

in Rule 41(d), otherwise they would have specified "costs other than attorney's fees" when considering an amendment to Rule 41 at the same time as Rule 54(d) was amended. *Id.* The *Cadle*, court then goes on to conclude that Rule 41 (d) is ambiguous and that it should be construed as including attorney's fees in order to better effectuate the purposes of the Rule.

The *Cadle,* court's finding that there was an ambiguity was incorrect in light of *Key Tronic. Key Tronic*, 511 U.S. at 1965.("[o]ur cases establish that attorney's fees generally are not recoverable absent explicit congressional authorization."). The word "costs" is not itself ambiguous. The *Cadle,* court therefore did not need to examine other rules of federal procedure in deciding the meaning of "costs." The *Cadle,* court could have just as easily examined other rules which do not specify that costs include attorney's fees when considering the issue. The *Cadle*, court obviously strove, in its view, to better effectuate the purposes o Rule 41(d) and chose to ignore the plain meaning of "costs" in doing so. The *Cadle,* court also ignored the "American Rule," which has few exceptions, in finding the word "costs" to be ambiguous.

The *Cadle*, court examined Rule 54(d) and noted that the rule mentions costs and costs other than fees. The *Cadle* court then found: " Had the Rule drafters intended Rule 41(d) to not include attorney's fees, they would have deployed the same phrase-"costs other than attorneys' fees"-utilized in Rule 54(d)(1)." *Cadle*, 242 F.R.D. at 698. The *Cadle* court could have just as easily reasoned that had the Rule drafters intended for Rule 41 to include fees, they would have specified that fees are recoverable, as the drafters did with regard to Rule 54 and in other rules of civil procedure. In fact, the latter reasoning would have been more consistent with the Supreme Court's decision in *Alyeska, Key Tronic,* and *Marek*.

The *Key Tronic*, court noted that while Congress had included attorney's fees provisions in some sections of CERCLA after the law was amended, it failed to do so with regard to the statute at issue in that case, § 107. The *Key Tronic*, Court noted that "[t]hese omissions strongly suggest a deliberate decision not authorize such awards." *Key Tronic,* 511 U.S. at 818-19. As in *Key Tronic,* the Rule drafters'

11

decision to not treat Rule 54 (d) and Rule 41 (d) the same when deciding whether costs should include attorney's fees, should militate *against* a finding that fees should be allowed, rather than for such a finding. In light of the aforementioned Supreme Court decisions, Congress' intentional omission of the word fees and its decision to decline to define costs as including attorney's fees would appear to be better evidence that Congress did *not* intend for the rule to provide for fees, than to find that Congress somehow meant for the word "costs" to include attorney's fees. It appears that such an interpretation would be more consistent with *Alyeska, Key Tronic,* and *Marek*. The Seventh Circuit's viewpoint that *Marek*, should control the issue of whether to award fees pursuant to Rule 41(d) is also consistent with *Alyeska* and *Key Tronic*.

      The *Cadle* court and other courts have bent over backwards to ignore Supreme Court and other precedent in an effort to better effectuate the purposes of Rule 41. However, there are a variety of tools available to federal courts when dealing with litigants who have abused the rules for voluntary dismissal, short of those that run afoul of Supreme Court precedent. Federal courts can apply principles of res judicata or collateral estoppel or use Rule 11 as a sanction against those litigants who may have voluntarily dismissed a case in bad faith. Ultimately, litigants who voluntarily dismiss in bad faith would ordinarily be prolonging the inevitable fee award anyway.

      It is also important to remember that Rule 41 states that once a party has once dismissed a case voluntarily, a second voluntary dismissal would result in a dismissal of that claim with prejudice. Thus, Rule 41 has its own internal mechanism for discouraging frequent voluntary dismissals. Further, given that a voluntary dismissal which requires no permission from the Court is available to a plaintiff only at the earliest stages of litigation, it seems that it was Congress' intent to allow plaintiffs the opportunity to voluntarily dismiss a case without having to pay fees.

      The cases granting Rule 41(d) motions have a recurring theme; the Plaintiff's actions were either improper, vexatious, simply reprehensible or a voluntary

dismissal was taken after years of litigation in state court.[7] Absent proof of similar conduct in the instant action, the taxing of costs is not appropriate. The undersigned has not come across any cases in any court has awarded Rule 41 costs when a plaintiff has dismissed a state court action and then re-filed new federal claims over which the original court had no jurisdiction.

In the present action, PNB is asking this Court to simply declare Rule 41(d) a windfall for Defendant. PNB would have this Court pronounce Rule 41(d) to have a sweeping effect so as to automatically grant costs whenever a suit is dismissed and the re-filed regardless of the reason for the initial dismissal. The law is clear that this was not the intended purpose of the rule. It is clear, however, that this Rule was enacted to serve as a deterrent against the re-filing of vexatious suits or those voluntarily dismissed in bad faith. *See, e.g., Esquivel v. Arau*, 913 F. Supp. 1382, 1386 (D. Ca. 1996).

### There is no bad faith or vexatious conduct because Wolf has raised federal claims that could not have possibly been brought in state court.

In *Shaker Village Condo. Assoc., Inc. v. Certain Underwriters at Lloyd's*, 2009 WL 398750 (S.D. Fla. 2009), this Court held that an award of fees should be made only to deter vexatious litigation and where the plaintiff has re-filed the same previously dismissed suit in bad faith. This Court relied on *Wishenski v. Old Republic Ins. Co.,* 2006 WL 4764424 (M.D. Fla. 2006), when making such a finding. The *Wishenski*, court declined to award fees in that case because there was no vexatious or bad faith conduct. PNB does not assert that Wolf acted in bad faith; nor is there any evidence of bad faith.

---

[7] *See e.g., Stifrung v. Sumitomo Corporation*, 2001 WL 1602 118 (D.NY .2001) (wherein the Plaintiff admittedly dismissed the first action and re-filed in another court so to avoid complying with the original court's orders); *See also, e.g., Shaker Village Condo. Assoc., Inc. v. Certain Underwriters at Lloyd's*, 2009 WL 398750 (S.D. Fla. 2009)(voluntary dismissal taken after two years of litigation, several motions were filed and non-binding arbitration was held).

There is no bad faith or vexatious conduct in this case, as there was none in *Wishenski*. In *Wishenski*, the plaintiff originally filed the case in Miami-Dade Circuit Court. Defendant removed the case to federal court and then filed its Answer and Affirmative defenses three (3) days later in Miami-Dade Circuit court. (Ex. F). The docket sheet also shows that one of the parties propounded subpoenas and discovery requests in state court. *Id.* The parties then agreed to voluntarily dismiss the matter in this Court. Plaintiff then re-filed the case in Lake County, Florida, and that case was removed to the Middle District. *Id.* Thus, the plaintiff in *Wishenski*, filed an action in two state courts, was removed twice, and Defendant filed an Answer in one of the state court actions. One party propounded discovery in one of the case. The Middle District declined to award fees under these circumstances.

Wolf took a voluntary dismissal the same day that a hearing was to be held on PNB's Motion to Dismiss Wolf's Second Amended Complaint. Even if the state court had granted PNB's motion and dismissed this case with prejudice, the instant case still would have been filed under the federal statutes alleged. Those federal statutes, particularly 12 U.S.C. § 1831j, are substantially different than the FWA such that any adjudication of the FWA claim would have no effect on the federal claim.[8] PNB would still be defending the instant lawsuit under any possible outcome of the state court hearing.

---

[8] More specifically, 12 U.S.C. §1831j encompasses complaints of any *possible* violation of law or regulation. In comparison, the FWA states that a violation of any law rule or regulation must be at issue, although this court has interpreted the FWA to encompass a plaintiff's good faith belief that a violation was to occur. *Padron v. BellSouth Telecommunications, Inc.*, 196 F. Supp. 2d 1250, 1256 (S.D.Fla.2002)("[s]tatutorily protected participation is established if Plaintiff can show that she opposed an unlawful employment practice which she reasonably believed had occurred") Twelve U.S.C. 1831j also goes much further and encompasses complaints regarding "gross mismanagement , a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;" Finally, 12 U.S.C. § 1831j also specifies that the reporting of such violations or abuses by a *director*, of a depository institution would be covered by that statute. In comparison, the FWA merely states that the illegal activity, policy or practice of an "employer" is covered. Wolf contends that

In this case, Wolf had no choice but to re-file in federal court in order to add the claims under federal law, 12 U.S.C. § 1831j and 31 U.S.C. § 5328. Those statutes state that the federal district courts have exclusive jurisdiction. Wolf had no choice but to voluntarily dismiss the state court action and re-file in federal court. Hindsight being what it is, one may argue that the case should have started in federal court. However, such a viewpoint is not an indicator of vexatious claims or bad faith conduct in light of the important purposes behind 1831j, which are self-evident. A finding of bad faith or vexatious conduct would be tantamount to a finding that Wolf should have chosen to forever forgo these important federal rights simply because he did not include such a claim from the outset. Inadvertently omitting relatively obscure, but valid claims at the beginning stages of litigation is not an indicator of bad faith or vexatiouness if later raised early on in the proceedings. In addition, such a finding would serve to deter plaintiffs from asserting such rights, as per *Christianburg*, and its progeny. As is discussed later in this memorandum, PNB's efforts were not for naught because the arguments that they raised earlier have found their way into the Motion to Dismiss pending before this court.

### An award of attorney's fees is not appropriate in light of the policies set forth in *Christianburg*, and its progeny.

Wolf contends that an award of attorney's fees would not be appropriate unless this Court finds this case to be frivolous, unreasonable or groundless, or that the plaintiff continued to litigate after it clearly became so, as per the Supreme Court's decision in *Christianburg Garment Co. v. EEOC*, 434 U.S. 412 (1978). In *Christianburg,* the Supreme Court held that a prevailing defendant should not be

---

Baquerizo, a director of PNB, acted on behalf and with the full authority of PNB and would come within both statutes. PNB takes issue with that contention with regard to the FWA, but it is clear that PNB has no such argument with regard to 12 U.S.C. § 1831j because it is undisputed that Baquerizo was a director of PNB.

15

awarded attorney's fees in a Title VII employment discrimination matter unless it can be shown that the case was "frivolous, unreasonable or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christianburg*, 434 U.S. at 422. Although Florida courts have declined to apply specifically *Christianburg*, to FWA claims, Florida district courts have held that the policy considerations upon which *Christianburg,* was based should be considered when deciding whether to award fees to a defendant who was successful in its defense of an FWA claim:

> "The Court concludes that the Defendant is not entitled to an award of attorneys' fees in this case. The Plaintiff's whistleblower's claim was not frivolous, and in light of the obvious gross disparity of resources between the Plaintiff and the Defendant an award of the fees in the magnitude sought by the Defendant could have an unwarranted "chilling" affect upon other worthy individual claimants. The whistleblower's statute establishes Florida's public policy in favor of promoting the disclosure of wrongdoing and the protection of those who make such disclosures, and while an award of fees to a prevailing Defendant is authorized by the statute, the same statute preserves the Court's discretion to withhold such awards when the granting of fees could be a disservice to the remedial purpose of the statute itself. Accordingly, the motion for attorneys' fees (Doc. 47) is DENIED."

*Brady v. Santa Sweets, Inc.*, 2007 WL 1245894 (M.D. Fla. 2007). In *Bell v. Georgia-Pacific Corp.*, 2005 WL 1618223 (M.D. Fla. 2005), the Middle District declined to award fees based on similar reasons. Wolf respectfully submits that if the aforementioned policy considerations are considered by Florida courts when declining to award fees to a prevailing defendant in an FWA case, then such considerations should certainly be considered in the instant situation, where there has been no adjudication on the merits.

### The imposition of fees would be a windfall to PNB since PNB has used its previous arguments in the motion to dismiss pending before this Court.

Although the purpose of awarding costs pursuant to Rule 41(d) is to prevent bad faith litigation, courts do consider whether the fees expended by a defendant in an earlier dismissed lawsuit would be helpful to a later lawsuit, or whether those fees will be a wasted effort, when deciding whether to award all or part of a

defendant's costs. In this case PNB has used the same arguments it lodged in state court in its pending motion to dismiss. Should the court award fees in this matter, Wolf would essentially be financing the costs of the defense of this case and that would clearly be a windfall to PNB. PNB was not successful in its effort to have this case dismissed with prejudice at the state court level. Some of PNB's arguments, such as the argument that Wolf was an at-will employee were clearly not meritorious arguments. [10]

In *Hisler v. Galludet Univ.*, 344 F. Supp. 2d 29 (D.C. 2004), the district court allowed the plaintiff to voluntarily dismiss her action more than two (2) years after the close of discovery, but conditioned any re-filing on the payment of the costs of the previously dismissed action insofar as "the payment of costs for work and effort incurred in the first case ….would not be of use in the second." *Hisler*, 344 F. Supp. 2d at 39. In *Trujillo v. Banco Central Del Ecuador,* 205 F.R.D. 648 (S.D. Fla. 2002), this Court denied fees to the defendant to the extent that the work performed by the defendant would be useful in litigation related to the claims that the plaintiff voluntarily dismissed. *Trujillo,* 205 F.R.D. at 654. The *Trujillo* court, noted that some of the work performed by the defendant in defense of a counterclaim would not be "wasted" because it could used in related litigation then pending outside of the country. In *Esquivel v. Arau*, 913 F. Supp. 1382, 1392 (C.D. Ca. 1996), the court limited the fee award to fees that would not "contribute toward defendants' defense in the present case" where the plaintiff in that case had intentionally filed the case in the wrong district.

PNB seeks attorney's fees for (1) "dealing with the illegal disclosure of confidential banking information," (2) preparing for and attending hearings on PNB's motions to dismiss the Amended and Second Amended Complaint; and (3) reviewing and responding to discovery requests.

As for the first item, Wolf amended the original Complaint in state court to remove confidential information, at the request of PNB. In addition, the

---

[10]   The FWA is an exception to Florida's at-will doctrine. *White v. Purdue Pharma., Inc.*, 369 F. Supp. 2d 1335 (M.D. Fla. 2005).

undersigned suggested that a motion to seal be filed to seal the original Complaint, and an Agreed Order was executed without the need for a hearing as a result. (Ex. A). Wolf prepared and filed the motion to have the original Complaint filed under seal. With regard to the second item, all of PNB's unsuccessful efforts to have this case dismissed with prejudice have been recycled in this case. Courts have limited Rule 41 (d) fee awards when a defendant has raised arguments in a motion to dismiss that were similar to those previously raised in the dismissed action. *See, e.g., Copeland v. Hussmann Corp.*, 462 F. Supp. 2d 1012 (E.D. Mo. 2006). With regard to the third item, PNB objected to each and every one of Wolf's discovery requests (with the exception of the interrogatory asking for the name of person affirming the responses) and never provided a single document to Wolf; nor did PNB provide any useful information, other than to acknowledge in its first interrogatory response that Wolf, was indeed, employed by PNB. It is clear from the responses that PNB blatantly disregarded any obligation to respond Wolf's discovery requests.[11] PNB did contend, in connection with some of the responses, that discovery should be stayed pending the court's ruling on the motion to dismiss. Wolf never filed a motion to compel. PNB should not be entitled to attorney's fees for simply preparing a list of objections and nothing else. There is absolutely nothing in PNB's response which would indicate that PNB made any effort to obtain any of the information requested in the discovery requests.

Apart from the foregoing reasons, it is questionable as to whether PNB sought to resolve this matter in good faith. PNB did make the undersigned aware of its intention to file the motion for fees before filing. However, PNB did not provide the undersigned with the amount that PNB is seeking; nor is there any explanation as to why PNB accrued hundreds of dollars in costs, as mentioned in PNB's Motion.

---

[11] As an example, PNB objected to any refused to provide the name of any witnesses whatsoever in response to the Wolf's second interrogatory, which called for the names of individuals with knowledge of the allegations of the Complaint.

Respectfully submitted,

/s Gary A. Costales
Gary A. Costales, Esq.
Florida Bar No. 0948829

GARY A. COSTALES, P.A.
1200 Brickell Avenue, Suite 1230
Miami, Florida 33131
(305) 375-9510
(305) 375-9511 (facsimile)
gary@youremploymentattorney.com

## CERTIFICATE OF SERVICE

**I hereby certify** that on July 13, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s Gary A. Costales

# SERVICE LIST

## *Wolf v. Pacific National Bank*
Case No. 09-21531-COOKE/BANDSTRA
United States District Court, Southern District of Florida

| | |
|---|---|
| Gary A. Costales, Esq.<br>gary@youremploymentattorney.com | Jeffrey R. Geldens, Esq.<br>jgeldens@broadandcassel.com |
| GARY A. COSTALES, P.A.<br>1200 Brickell Avenue, Suite 1230<br>Miami, Florida 33131<br>(305) 375-9510<br>(305) 375-9511 (facsimile)<br>Attorney for Plaintiff<br>Carl Wolf<br>Notice of Electronic Filing | BROAD AND CASSEL<br>2 South Biscayne Blvd., 21st Floor<br>Miami, FL 33131<br>(305) 373-9400<br>(305) 373-9443 (facsimile)<br>Attorney for Defendant<br>Pacific National Bank<br>Notice of Electronic Filing |