UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NUMBER: 09-21531-CIV-MORENO

CARL WOLF,
Plainitff,

vs.

PACIFIC NATIONAL BANK,
Defendant.
_________________________/

**DEFENDANT'S BRIEF ON MOTION FOR ATTORNEY FEES UNDER RULE 41(d)**

Pursuant to the Court's Order of September 16, 2009 (D.E. 23, the "Order"), Defendant Pacific National Bank ("Pacific") submits its brief on attorneys' fees as a cost under Federal Rule of Civil Procedure 41(d). The record shows that Wolf's litigation strategy entails "hiding the ball" and otherwise attempting to interfere with the "just, speedy, and inexpensive" determination of this action. *See* Fed. R. Civ. P. 1. As a result, the Court should require Wolf to pay the appropriate portion of Pacific's defense costs, because Wolf unnecessarily, and willfully, switched forums and caused Pacific to incur additional costs in defending against his claims.

**INTRODUCTION**

This is a case about a former bank executive seeking post-termination payments to which he is not entitled. Wolf was formerly president of Pacific, but he disagreed with Pacific's board on operational decisions, which facilitated his departure. Wolf had no employment contract with Pacific. To obtain payment, he claims he was a whistle blower and was fired in violation of the whistle blower statutes. He was not. This is Wolf's fourth try at filing his purported causes of action. Wolf filed his first lawsuit in October 2008, and since then, he has re-filed more than once. Wolf filed multiple complaints, invoking the Florida Whistle Blower Statute, in state

court. In state circuit court, Wolf's complaints were dismissed twice: the trial judge dismissed once, and upon re-pleading, Wolf waited to dismiss voluntarily until the day of a hearing on Pacific's motion to dismiss. In addition, in the state court case, Wolf required Pacific to respond to discovery, and required sealing of the original complaint to protect against improper disclosure of facts in violation of bank secrecy laws.

Wolf did not allow Pacific to rest for long. After voluntarily dismissing the state court case, Wolf filed a "new" suit in this Court. The case was assigned to Judge Moreno, who rejected Wolf's improper filing under seal and dismissed pending an appropriate filing. Wolf filed again, and Judge Cooke drew the case. Pursuant to the District's rules, Judge Moreno accepted return of the case. Pacific filed a motion under Federal Rule of Civil Procedure 41(d), which permits the Court to impose the costs of the previous action as a condition of re-initiating a suit which, as in this case, was voluntarily dismissed in any previous Court. The Court granted the motion, citing to *Cadle Co. v. Beury*, 242 F.R.D. 695 (S.D. Ga. 2007), and this action is currently stayed pending payment of the costs. Wolf contends he has paid the costs, and requested the Court re-open the case, because he tendered a check for just over a hundred dollars. Pacific, however, opposed Wolf's request, because Wolf did not pay Pacific's reasonable attorneys' fees, which were submitted via a filing with the Court pursuant to the Court's order. (D.E. 20, 22).

On September 16, 2009, the Court ordered that the parties "shall file briefs addressing whether attorneys' fees should be awarded as an element of costs on the specific facts of this case." (D.E. 23). Thus, it is undisputed that the Court has the authority, under Rule 41(d), to require Wolf to pay Pacific's attorney fees. The question before the Court is whether the record supports exercising the Court's discretionary power to do so. In this case, Pacific respectfully

submits it is appropriate, for three reasons: a) the relevant authority awarding fees in this Court and elsewhere, including the case cited in this Court's order granting Pacific's motion for Rule 41(d) costs, contains similar facts; b) Wolf's conduct in this case deprived Pacific the benefit of the tasks for which Pacific seeks compensation in its submissions; and c) Wolf's conduct in this case suggests he is "forum shopping" or otherwise utilizing the courts in a willfully inefficient manner.

## ARGUMENT

### A. Relevant authority provides an award of fees is appropriate under these facts.

The Court should use its discretion under Rule 41(d) to require Wolf to pay Pacific's attorney fees as requested in the Pacific's motion. In granting Pacific's motion for costs, the Court cited authority holding that attorney fees can be included in the costs awarded. In addition, two cases, one decided in this District, awarded the defendant fees under sufficiently analogous facts. In both cases, the plaintiff used voluntary dismissal strategically and sought to re-initiate the case in another forum where carry-over from the previous case would be limited for the defendant.

#### 1. *Cadle:* costs that are "vaporized" or are not "useful" in this case can be awarded.

The Court's Order granting Pacific's motion for costs under Rule 41(d) cited *Cadle Company v. Beury,* 242 F.R.D. 695 (S.D. Ga. 2007), which awarded attorney fees as a component of its order under Rule 41(d). That outcome is appropriate in this case. In *Cadle*, the Southern District of Georgia awarded the defendant attorney fees under Rule 41(d), and addressed issues similar to those raised by the facts of this case. *See* 242 F.R.D. at 696. In the initial *Cadle* order, the court summarized the relevant facts by noting the case was a "collection case seeking a property-foreclosure deficiency judgment" against the Beurys. *Id.*. At issue were

three promissory notes, under which Cadle sued the Beurys in Texas. *Id.* The Beurys argued the statute of limitations prevented collection, and after fifteen months of litigation and a 2.5-hour hearing, Cadle voluntarily dismissed the case and re-filed the lawsuit, seeking to recover on two of the notes. *Id.* The *Cadle* court found Rule 41(d)'s requirement for payment of costs applied. *Id.* The *Cadle* plaintiff argued that there was sufficient overlap to warrant excluding fees from the cost award. The *Cadle* court, however, concluded that the payment should be reduced by one third because the third note was not at issue. 242 F.R.D. at 699. In addition, the *Cadle* court applied a test through which it only excluded recovery of fees that "reaped a benefit that was not vaporized by Cadle's dismissal." *Id.*

In a second order, the *Cadle* court considered a motion for reconsideration, because the Beurys had field a declaratory judgment action in Texas that addressed the third promissory note. *Cadle Co. v. Beury,* No. 4:06-cv-255, 2007 U.S. Dist. LEXIS 42148 (S.D. Ga. June 11, 2007). The *Cadle* court rejected the defendant's argument that less of the Beurys costs should be shifted to Cadle because of the pending declaratory judgment action. *Id.* at *9. The court reasoned that its award already accounted for that, because Cadle's dismissal and switching forums "caused a significant amount of those costs to go to waste – the amount related to the two notes here." *Id.* at *8-9. Because the third note was not at issue in the present case, Cadle did not cause the amount related to that note to go to waste. *Id.* As the Court summarized, this meant that "the state-court successes are useful, but they are still not useful in this case." *Id.* Thus, the *Cadle* court stayed true to its original rule: costs that are not useful in the subsequent case, and therefore incurred for no benefit, are chargeable to the plaintiff when he chooses to switch forums. *See id.*

As the Court recognized in citing to *Cadle* in its Order, the facts of this case are sufficiently close to warrant application of *Cadle*, requiring Wolf to pay attorney fees as a

requirement of re-initiating his case. In this case, as in *Cadle*, the plaintiff dismissed voluntarily before the court could rule on a dispositive issue. The costs of preparing and attending the hearing on the motion to dismiss were lost because Pacific did not obtain an order from the state court. In addition, the preclusive effects of the initial dismissal were lost, because in this case, Wolf is on his first, rather than his second, try at pleading.

In addition, despite similarities in his allegations, Wolf continues to vaguely use small differences in an effort to avoid repeated dismissal. For example, when Pacific challenged Wolf's contention that the mere access to conference rooms could not constitute a violation of law, Wolf re-pleaded to change his allegation from stating the use was in violation of "Chinese wall restrictions" to allege the conclusion that the access was "unfettered." *See* Amended Complaint D.E. 12-3 at 4, D.E. 12-3 at 16. But Wolf deprived Pacific of the opportunity to determine whether that was enough of a change.[1] That practice continues in this Court, where Wolf added an allegation that Basquerizo's request for a raise would have somehow violated the "Foreign Corrupt Practices Act," which was not referenced in the Second Amended Complaint in the Circuit Court. (Compl. ¶ 63; D.E. 12-3 at 21). Wolf has set up a moving target for Pacific's efforts to dismiss or narrow the pleadings. In this Court, he chose to assert Federal causes of action, even though the facts have not changed and the causes of action could have been asserted in state court. Wolf gets to start his case from scratch – and is not bound by his earlier causes of action – simply because he voluntarily dismissed. As a result, Pacific has to start over in this Court, and loses a substantial part of its efforts in the state court.

**2. *Shaker Village: "some material degree of prejudice" justifies awarding fees.***

---

[1] As noted in Pacific's motion to dismiss, Wolf's position on the conference room use is factually inconsistent. On the one hand, he claims access by officials of related entities to Pacific's facilities is illegal, while on the other hand, he claims that Pacific and its affiliates are a "single entity." Wolf's tactics involve fishing for a cause of action at Pacific's expense.

In this District, the Court has applied the *Cadle* court's analysis and provided for an award of fees under Rule 41(d) when the case shifted from state to federal court to the defendant's detriment. In *Shaker Village Condominium Association v. Certain Underwriters at Lloyd's*, No. 08-61935, 2009 WL 2835185 (S.D. Fla. Sept. 1, 2009), this Court adopted and affirmed the Magistrate's order ruling that attorneys' fees were due to the defendant under Rule 41(d). In *Shaker Village*, the plaintiff condominium association filed a lawsuit in state court, and "after the filing of several pre-trial motions, the Circuit Court referred the parties to non-binding arbitration under that Court's administrative orders." *Id.* at *1. The arbitration was suspended pending settlement negotiations, and when settlement negotiations broke down, the plaintiff chose to sue in federal court rather than resume the arbitration. *Id.* Lloyd's filed a motion under Rule 41(d), and the District Judge referred the attorneys' fee issue to the Magistrate for determination. *Id.* After receiving the appropriate submissions required under Local Rule 7.3, the Magistrate addressed the only remaining issue, "Plaintiff's argument that any fees awarded should be limited to those fees incurred in the state court action" that were "no longer useful" to Lloyds in the federal case. *Id.* at *2.

The *Shaker Village* award was not linked to a specific finding of bad faith by the plaintiff, and instead, consistent with the purpose of Rule 41(d) described in *Cadle* and other opinions,[2] relied upon the extent that plaintiff's voluntary choice to dismiss caused sufficient prejudice to the defendant. In deciding Lloyd's was entitled to its reasonable fees for tasks that did not carry over, the *Shaker Village* court noted that "Lloyd's did not and need not present concrete evidence of bad faith to recover fees," but instead, Lloyd's could point to among other

[2] *See, e.g., Esquivel v. Arau*, 913 F. Supp. 1382, 1390 (C.D. Cal. 1996). In addition, this Court's order in *Shaker Village* granting attorney fees and referring the amount issue to the Magistrate stated that attorneys' fees are appropriate under Rule 41(d) "to prevent forum shopping, especially by plaintiffs who have suffered setbacks in one court and dismiss to try their luck somewhere else." *Shaker Village*, No. 08-61935, at D.E. 29.

facts, that "Plaintiff voluntarily dismissed the claim in Broward County with the full intention of filing the same claim in the Southern District of Florida without delay." *Id.* at *3. That fact, "on its face presents some material degree of prejudice." *Id.* Further, the Court noted that "because of Plaintiff's original venue choice, Lloyd's was forced to incur fees . . . that would not have been incurred had the case originally been filed in the Southern District of Florida." *Id.* The fees Lloyd's incurred were the result of the arbitration process, which was unique to the state court under its administrative rules. *See id.* Consistent with the analysis in *Cadle*, the *Shaker Village* court noted that awardable fees did not include fees "when the work involved will prove necessary for the ultimate resolution of the second-filed action." *Id.*

In this case, as the plaintiff did in *Shaker Village*, Wolf caused Pacific to incur fees for work that will not carry over. As a result, the Magistrate's order in *Shaker Village* provides useful guidance to this Court in determining how much Wolf should pay Pacific. The *Shaker Village* court agreed Lloyd's should recover for its fees associated with the arbitration, and the preparation of its motion to dismiss in state court. Further, in that case, the Magistrate noted that fees for the unsuccessful mediation, pretrial discovery, and general case strategy "would most assuredly have been incurred in this action and the work preformed can presumably be recycled in this case with little or no additions." *Id.* at *4. In this case, Pacific seeks fees for its efforts that cannot easily be recycled. As noted in Pacific's motion, Pacific seeks payment for preparing for hearings on two motions to dismiss, reviewing and responding to discovery, and remedying Wolf's improper disclosure of statutorily confidential material in his original complaint. In this case, as a result of Wolf's voluntary dismissal, Pacific has substantially lost the benefit of each of those efforts.

**B. Wolf's conduct in this case deprived Pacific the benefit of the tasks for which Pacific seeks compensation.**

In this case, Pacific submitted records to the Court of its attorney fees that were incurred in furtherance of tasks that it is likely will not carry over from the state court case. As noted in *Shaker Village*, the benefit of hearings on the motions to dismiss, as well as any work that does not carry over, is appropriately compensated under Rule 41(d). In this case, Wolf filed an amended complaint, which the Circuit Court dismissed. Pacific filed a motion to dismiss, prepared for a hearing, and attended the hearing. *See, e.g,* D.E. 20-2 at p. 19 (invoice for services rendered preparing for hearing). Then, Wolf amended the complaint and filed a second complaint, which purportedly corrected the defects the Circuit Court found with Wolf's pleading. Pacific filed a motion to dismiss that complaint, prepared for a hearing, and, on the morning of the hearing, was served with a notice of voluntary dismissal. *See, e.g.,* D.E. 20-2 at 25, 31. Although the substance of the complaints remained the same as to the causes of action, the case-specific preparation costs, including review and analysis of the "new" allegations – as well as the Circuit Court's institutional knowledge of the previous complaint – do not carry over to this Court. Further, Federal and State procedure do not impose identical pleading standards, most notably the *Twombley* standard. Therefore, as a result of the forum shift there is some material prejudice to the value of Pacific's previous work in responding to Wolf's complaint, for which Wolf should pay attorney's fees.

Similarly, Pacific's response to Wolf's conduct with regard to discovery in the state court case does not carry over to this forum. Although, as recognized in *Shaker Village*, it is likely that discovery would carry over, the **manner** in which discovery would have occurred in this case in federal court would not have triggered the fees Pacific incurred. As noted in Pacific's motion papers, Wolf served numerous discovery requests on Pacific, and then refused to narrow them despite their improper breadth. *See, e.g.* D.E. 20-2 at p. 9-10, 14, 18. Among other useless

discovery, Wolf served discovery targeted at discrimination claims, and this is not a discrimination case. Further, the record shows Wolf postured to force a motion for extension of time, along with a likely motion for protective order, while Pacific's Motion to Dismiss was pending. Despite Pacific's good-faith efforts to compromise, Wolf pushed further, demanding deposition dates for seven individuals without any explanation and refusing to pare down the discovery requests. *See* D.E. 15-2; 15-3 (correspondence among counsel regarding discovery issues). In this Court, Wolf would not have been able to unilaterally serve discovery or otherwise employ such tactics, because the timing and sequence of discovery are regulated through mutual agreement and Court approval under the applicable rules. Consequently, early discovery might have been postponed pending the motion to dismiss, or alternatively, upon a court-approved mutual timeframe based upon the operation of Local Rules 16.1 and 26.1. The Florida Rules of Civil Procedure do not mandate such early case management, and indeed, permit service of discovery with initial process. *See, e.g.,* Fla. R. Civ. P. 1.350(b). Thus, the forum affected how discovery happened, and in this case, Pacific seeks reimbursement for the loss of its discovery efforts in state court.

Third, Wolf's shift in forum removed the value of Pacific's efforts regarding the sealing of the original complaint in the state court. *See, e.g,* D.E. 20-2 at 5 (invoices for work in connection with sealing the state court complaint). In initially asserting his claims and filing the complaint in state court, Wolf disclosed the specifics of certain events which are protected from disclosure under Federal law. Wolf's complaint contained information regarding specific account holders and actions taken that were to be shielded under the bank secrecy act. The specifics of a bank's interactions with regulators are not to be disclosed, but Wolf's initial complaint contained such facts, requiring remedial action to protect against further disclosure.

*See Gregory v. Bank One, Ind., N.A.*, 200 F. Supp. 2d 1000, 1003 (S.D. Ind. 2002) (recognizing the federal courts' role in ensuring protection of such information); *Weil v. Long Island Savings Bank*, 195 F. Supp. 2d 383, 389 (E.D.N.Y. 2001) (discussing the confidentiality that applies to banks' regulatory filings regarding customers' suspicious activity). Because Wolf filed a new complaint, in a new court, Pacific lost the benefit of its efforts to protect confidentiality in the original case. Further, Wolf changed the nature of his pleading – including adding new causes of action – to include facts addressed specifically toward internal banking operations. Thus, Wolf's new pleading might raise additional confidentiality concerns that would not be covered by the Circuit Court's order sealing the case. For example, the previous sealing resulted from an approved agreed order among the parties; in this Court, that procedure is unavailable. In addition, Wolf's switching of forum allowed him to file a complaint whose content was fully disclosed in, among other sources, the press. *See, e.g,* Gerardo Reyes, "Demandan al Banco de Ecuador por anomalias," *El Nuevo Herald*, June 9, 2009, at http://www.elnuevoherald.com/opinion/columnistas/gerardo-reyes/story/470219.html (last visited Sept 30, 2009). Indeed, a Google search that includes the names of Plaintiff and his counsel includes several articles which post-date the filing of this suit, but none dated during the pendency of the state court lawsuit. The press coverage even elicited comments from the President of Ecuador. *See Diario Hoy*, June 10, 2009, http://www.hoy.com.ec/noticias-ecuador/presidente-tilda-de-ridiculo-caso-contra-su-prima-352632.html (last visited September 30, 2009).

**C. Wolf's conduct in this case suggests he is "forum shopping" or otherwise utilizing the courts in a willfully inefficient manner.**

Wolf's litigation tactics in this case suggest he is either abusively fishing for a cause of action, in order to prolong Pacific's defense process, or forum shopping to seek the best

outcome. For example, the voluntary dismissal's timing is suspicious, and at best, willfully wasteful of resources. Wolf had sufficient time to decide a new complaint should be re-filed with this Court after the Circuit Court dismissed his complaint. Wolf was ordered to amend on February 9, 2009; he amended the complaint on March 3, 2009; Pacific moved to dismiss on March 30, 2009; Pacific's motion was noticed for hearing on April 6, 2009; and Wolf's voluntary dismissal was filed on May 7, 2009, the date of the hearing on Pacific's motion. D.E. 8-1. Second, Wolf's response to Pacific's efforts to streamline early discovery show he intended to maximize costs to Pacific at the beginning of the case. Although a complete stay pending Pacific's motion to dismiss was improbable, Pacific properly sought to limit the scope of early discovery and weed out irrelevant, burdensome, or intrusive requests. *See* D.E. 15-2. Wolf's response threatened to seek court intervention compelling full discovery. *Id.* Wolf's conduct suggests he wanted to maximize early benefits and initial cost to Pacific, by requiring discovery responses and depositions, or at a minimum, discovery motion practice. That is not a good faith use of the discovery process, and Pacific's efforts in responding to Wolf's efforts do not carry over to this case. As a result, the Court should require Wolf to pay Pacific's attorney fees associated with discovery in the state court litigation.

In addition, Wolf made two arguments to this Court that show he intended to make this case as costly as possible for Pacific. First, Wolf claims that had he lost in state court "the instant case would still have been filed." D.E. 11 at 14. Not only does that argument completely disregard the need for "just, speedy, and inexpensive" resolution of actions that both Florida and Federal courts mandate (Fed. R. Civ P. 1; Fla. R. Civ. P. 1.010), it misstates the law. *See, e.g., Copeland v. Housing Auth. of Hollywood*, 300 Fed. Appx. 843, 844 (11th Cir. Nov. 25, 2008) ("Res judicata bars the filing of claims which were raised or could have been raised in an earlier

proceeding."). Moreover, that is an admission to forum shopping. Second, Wolf claims that he did not bring the Federal claims he asserts in this lawsuit in state court because he "discovered" them while preparing for the second motion to dismiss hearing. It is noteworthy that the section of the United States Code requiring confidentiality that required Wolf to seal his original complaint is in the same section of the United States Code that Wolf invokes in this case – incorrectly, given its language -- on his fourth try here. *See* 31 U.S.C. 5318(g)(2); 31 U.S.C. §5328. Further, Wolf's purported extensive knowledge of the banking laws as alleged in the complaint, and his repeated accusations against Pacific regarding violations of them, belies any claim that the federal causes of action in this case are "relatively obscure." *See* D.E. 11 at 15. Indeed, Wolf's contention he did not find this cause of action until now, even assuming that were a valid basis to delay bringing the claim until the fourth version of his complaint, is implausible. There is a more plausible explanation consistent with his earlier admission: he is grasping at straws to create a cause of action where none exists and he is forum shopping.

Lastly, Wolf's conduct when taking litigation-changing actions supports an inference he is forum shopping. Wolf has somehow been able to get this case before five judges: three Circuit Court judges, and two District Judges. The state court case was originally before Circuit Judge Zabel. While the motion to dismiss was pending, pursuant to the Circuit Court's administrative procedures, Judge Zabel was re-assigned to another division, and Judge Valerie Manno-Schurr was assigned to the case. Judge Manno-Schurr heard Pacific's Motion to Dismiss at a hearing on February 5, 2009. Judge Manno-Schurr ruled at the hearing. Wolf re-filed, pursuant to the Circuit Judge's order, and Pacific moved to dismiss. The motion to dismiss was to be heard before Judge Michael Genden. On the morning of the hearing, before Judge Genden was to hear the motion to dismiss, Wolf voluntarily dismissed and left state court. On May 15,

2009, Wolf filed his suit in this Court, and drew Judge Moreno. Judge Moreno dismissed the case because Wolf improperly attempted to file under seal. Wolf then re-filed and drew Judge Cooke. Pacific, not Wolf, sought to have the case returned to Judge Moreno, and pursuant to the District's Administrative Procedures, both Judges agreed to the transfer. Pacific respectfully submits that at least some of these changes in audience are strategic choices by Wolf. And each time Wolf makes such a change, Pacific must re-adjust. That is the kind of prejudice that Rule 41(d) attorney fee awards are designed to remedy. Consequently, Wolf should be required to pay Pacific's reasonable attorney fees for work that was "vaporized" or is no longer "useful" as a condition of re-initiating his case in this Court.

## CONCLUSION

For the reasons stated above, and as the Court ruled in its August 11, 2009 Order citing to *Cadle*, the Court should keep this case on the inactive docket pending Wolf's payment of appropriate attorney fees to Pacific. Wolf's conduct in pursuing his lawsuit against Pacific caused the loss of the value of work performed in the state court case, and under governing law, an award of the fees for such work is appropriately awarded as a "cost" under Federal Rule of Civil Procedure 41(d).

Respectfully submitted,

BROAD AND CASSEL
Attorneys for Pacific National Bank
2 South Biscayne Boulevard, 21st Floor
Miami, Florida 33131
Phone: (305) 373-9400
Facsimile: (305) 373-9443

By: /s/_________________
Jeffrey R. Geldens
Florida Bar No. 673986

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2009, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**SERVICE LIST**
*Carl Wolf v. Pacific National Bank*
09-21531-CV-FAM
United States District Court, Southern District of Florida

**Via CM/ECF**

Gary A Costales, P.A.
1200 Brickell Avenue, Suite 1230
Miami, FL 33131
CostalesGary@Hotmail.com
(Counsel of Record for the Plaintiff)