# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 09-21531-Civ-MORENO/TORRES

CARL WOLF,

   Plaintiff,

vs.

PACIFIC NATIONAL BANK,

   Defendant.

_____/

## REPORT AND RECOMMENDATION

  This matter is before the Court on a Rule 12(b)(6) motion filed by Defendant Pacific National Bank ("Pacific") as to all claims filed by Plaintiff Carl Wolf ("Wolf"). The Court has reviewed the motion, response, reply, and the record in the case, which includes prior attempts to plead a cause of action in state court prior to the filing of a complaint before this Court.  For the following reasons, this latest complaint should be dismissed.  And because it is clear that any more attempts to plead a cause of action would likely be futile, the complaint should be dismissed with prejudice.

# I.  BACKGROUND

## A.  *Procedural History*

Plaintiff Wolf, a bank executive formerly employed by Defendant Pacific, filed his original lawsuit in state court on October 29, 2008, alleging a wrongful termination claim in violation of the Florida Whistleblower Act, Fla. Stat. § 448.102.  An amended complaint was filed eight (8) days later that restated the claim in two separate counts, both under the Florida Whistleblower Act.  After service of the amended complaint, on November 24, 2008, Pacific responded in that proceeding through a motion to dismiss.[1]

Following a hearing on the motion held on February 9, 2009, the state court entered an Order dismissing the amended complaint without prejudice because the facts pled in the complaint were unclear as to what Wolf was complaining about, about what the protected activity was, or as to who the parties and actors were in relation to the bank that give rise to liability.  [D.E. 25-3].

Wolf then filed on March 3, 2009, a second amended complaint that added additional detail to the original whistleblower allegations to respond to the Court's concerns.  Pacific responded to that second amended complaint with another motion to dismiss, filed March 30, 2009, making some of the same arguments as in its original Motion to Dismiss, plus additional arguments why the restated whistleblower claims still failed as a matter of law.  The second motion to dismiss was noticed for argument on May 7, 2009.  That hearing never took place, however, because earlier that same

---

[1]  Pacific also requested at that time that confidential information be redacted from the original Complaint based on banking privacy regulations, 12 C.F.R. § 563.180.  As a result, Wolf prepared and filed a motion to place the original complaint under seal, for which an agreed Order was prepared and entered without hearing.

day Wolf filed a voluntary dismissal without prejudice, thereby terminating the state court action.

Shortly thereafter Wolf re-filed his action against Pacific in federal court, under seal, on May 15, 2009. On May 20, 2009, this Court dismissed that sealed complaint, stating that the Court had never given permission to Wolf to file the matter under seal. Wolf removed the confidential material and filed a second federal action on June 8, 2009 [D.E. 1], which was transferred back to Judge Moreno's docket under the Court's Local Rules. The re-filed complaint alleged the very same Florida Whistleblower Act violations filed in state court (Counts I and II), plus two counts of alleged violations under the Federal whistleblower provision found in 12 U.S.C. § 1831j (Counts III and IV), as well as a separate provision found in 31 U.S.C. § 5328 (Counts V and VI).

In response to the Federal Complaint, Pacific moved to dismiss the federal complaint [D.E. 10]. With respect to the Florida whistleblower claims, Pacific essentially reargued many of the points previously raised in response to the second amended complaint Wolf filed in state court. With respect to the new federal whistleblower claims, Pacific added the arguments that the factual allegations were not sufficient or plausible to state a claim under Rule 8, that the complaint's allegations of causation were insufficient, that the allegation of a perceived violation of federal law was not adequately pled, that no remedy exists under 18 U.S.C. § 1831j for a "refusal to provide severance" as alleged in Count IV, and that no claim could be stated under 31 U.S.C. § 5328 as alleged in Counts V and VI because Pacific is not subject to that particular statute under its own terms because it was a financial institution governed by section 1831j.

Before ruling on the motion to dismiss, however, the case was closed pending adjudication of an accompanying motion for Rule 41 costs filed by Pacific, which sought costs (including attorneys' fees) incurred in the defense of the state court action that was unilateraly dismissed by Wolf in favor of a federal forum.  After full briefing, the Court recommended that the motion be granted in part.  After Wolf objected, the District Judge affirmed and adopted that recommendation and Ordered that Wolf reimburse Pacific $5,332 in fees and $190 in costs prior to the continuation of the federal action.  Wolf chose not to appeal that Order and instead made the required reimbursement payment to Pacific and filed a notice of compliance in accordance with that Order.  The case was then reopened and referred to the undersigned for disposition.  This motion is thus ripe for adjudication.

**B.** **_Allegations in the Pending Complaint_**

In what is now the third iteration of Wolf's claims against Pacific, the relevant allegations are summarized here.  Wolf alleges that he is a bank executive formerly emplyoyed as President of Pacific.  Pacific is a federallychartered bank, located in Miami, Florida.  Pacific is a member of a group of entities that includes Banco Pacifico del Ecuador (BPE), Pacific's majority shareholder. Under Ecuadorian law, Banco Central del Ecuador (BCE), the Central Bank of Ecuador, owns BPE.

Pacific, a federally chartered bank, employed Wolf in Miami-Dade County at all material times, and he was not employed by the foreign BCE or BPE entities. (Compl. ¶¶ 4, 7, 8).  Wolf further alleges that, in May 2008, Pacific terminated Wolf, who was admittedly an at-will employee.  Pacific had hired Wolf in December, 2005 to serve as

Senior Vice President and CFO, and promoted him to President in March, 2007. (Compl. ¶ 17). During this tenure as Pacific's CFO, and during the period he served as President, Pacific was placed under the watch of the Office of the Controller of Currency pursuant to a Consent Order. (Compl. Ex 3). At the time Wolf was terminated, Pacific was still attempting to comply with the Order's dictates, even though the Consent Order contemplated compliance within less than a year. (Compl. Ex. 3; Compl. ¶ 39).

The Complaint then alleges that at the time of Wolf's termination only one of the members of the Board of Directors had served in that capacity when the Board of Directors signed the Consent Order. (Compl. Ex. 1; Ex. 3). Pacific's Board of Directors then terminated Wolf in May, 2008, after Wolf requested a vote. (Compl. ¶ 52). Wolf concludes that he was terminated for allegedly blowing the whistle on four purportedly illegal activities by Pacific.

Wolf claims he opposed the use of conference rooms by employees of BCE (notably not Pacific) because it would not "guarantee the privacy of [Pacific's] clientele." (Compl. ¶ 35). The complaint does not allege how the privacy violation would occur. Wolf then alleges he rejected a plan by a BCE director to re-open accounts Wolf ordered closed. (Compl. ¶ 37-40). Wolf alleges he was "urged to hire a convicted felon wanted in Ecuador," but not through Pacific, and instead through a "third party contractor," for whom Wolf does not allege to have worked. (Compl. ¶ 42). Wolf also alleges that a Pacific officer, Andres Basquerizo, asked if he could be paid by Pacific to make up for a sudden decrease in his salary at BPE mandated by a newly-minted Ecuadorian legal requirement. (Compl. ¶ 30). At one of many dinners at Morton's Wolf alleges he

claimed it could not be done because it would violate "U.S. and international law," and "generally accepted accounting principles." (Compl. ¶ 31).  Wolf alleges Basquerizo "sent several emails asking Wolf to find a way he could be compensated in Miami in order to circumvent the laws of Ecuador." (Compl. ¶ 32).  Wolf states he said no to those requests via emails to the Pacific Board of Directors. (Compl. ¶ 33).

Other than the conference room use, Wolf's pending complaint does not allege Pacific rejected any of his recommendations.  Yet Wolf argues that his "whistleblowing" efforts and his termination gave rise to claims under the state and federal whistleblower statutes cited in the complaint.  Based upon these allegations, we turn to consider Pacific's arguments for dismissal under Fed. R. Civ. P. 12(b)(6).

## II.  ANALYSIS

### A.  *Standard of Review*

The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of a complaint.  We take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *E.g., Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008).  We are not, however, required to accept the labels and legal conclusions in the complaint as true.  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009); *see Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a complaint "requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Dismissal for failure to state a claim is proper if the factual allegations are not "enough to raise a right to relief above the speculative level." *Rivell*, 520 F.3d at 1309 (quoting *Twombly*, 550 U.S. at 555). "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." *Sinaltrainal*, 578 F.3d at 1260 (citing *Iqbal*, 129 S.Ct. at 1950; *Twombly*, 550 U.S. at 561-62, 570). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.' " *Financial Sec. Assur., Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1282 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 557). *See also Edwards v. Prime, Inc.*, 2010 WL 1404280, at *8 (11th Cir. April 9, 2010) (applying *Twombly* and *Iqbal*).

To summarize, in applying these refined standards for dismissal, under both Rule 8 and Rule 12, a district court should engage in a two-step process:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 129 S. Ct. at 1950, *quoted in Jacobs v. Tempur-Pedic Int'l, Inc.,* 2010 WL 4880864, at *1-2 (11th Cir. Dec. 2, 2010) (applying *Iqbal* and affirming dismissal with prejudice of initial complaint without leave to amend).

**B.**   ***Counts I and II - The Florida Whistleblower Protection Act***

Counts I and II of Wolf's latest complaint against Pacific are premised on Wolf's wrongful termination rights under Florida state law.  Under this statute, Wolf must have engaged in one of the following protected activities: (1)"disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing" after Wolf "in writing, brought the activity, policy, or practice to the attention of a supervisor or [Pacific]" and "afforded the employer a reasonable opportunity to correct the activity, policy, or practice;" (2) "provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation" by Pacific; or (3) "objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."  Fla. Stat. § 448.102 (2007).

The failure to allege a "violation of a law, rule or regulation" negates any right to relief under this statute.  Wolf's claims in Count I and II accordingly fail as a matter of law.  The only such authority that Wolf invokes throughout his Complaint is a consent order entered into with U.S. Office of the Comptroller of the Current ("OCC") that he alleges that Pacific was violating.  Such a consent order amounts to an agency order, but that by definition is not "law, rule, or regulation."

The Florida statute Act specifically defines "[l]aw, rule, or regulation" as "any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." Fla. Stat. § 448.101(4).  Under that definition, the Consent Order Wolf invokes is, as

a matter of law, *not* a "law, rule, or regulation."  The Consent Order is not a statute or ordinance, as the OCC is an executive agency, not a legislative body.   The OCC Consent Order indeed makes clear that it is "intended to be, and shall be construed to be, a final order issued pursuant to 12 U.S.C. §1818(b)." (Compl. Ex. 3, at 12).   By definition, the Consent Order is an order that is issued, rather than a rule or regulation that is adopted, as required by the Act.

Under Florida law, an order is not a "law, rule, or regulation" as that term is used in the Act.  For instance, in *Tyson v. Viacom, Inc.,* 760 So. 2d 276 (Fla. 4th DCA 2000), the plaintiff alleged he was fired for writing a federal judge to report that his employer, Viacom, violated the court's injunction.  *Id.* at 276-77.  The court of appeals affirmed the dismissal of the complaint because a court is not an "agency," and further "violations of court orders or injunctions are subject to the contempt powers of a court issuing the injunction." *Id.* at 277.  Similarly, in *Gillyard v. Delta Health Group, Inc.,* 757 So. 2d 601, 603 (Fla 5th DCA 2000), the plaintiff was fired for not going to work, and she alleged she did not go to work because the Governor and County issued executive orders requiring "mandatory evacuation" of the county where she lived and worked, and therefore she was improperly fired for refusing to break the law. That executive order was not, however, an enacted "law, rule or regulation." The complaint was dismissed because "a governor's executive order is not a law. . . it is issued pursuant to a State statute," and "neither the Governor's executive order nor the Flagler County order requiring mandatory evacuation . . . .is a law, rule, or regulation as defined in Section 448.102." *Id.* at 603.

Here, there is no enacted law, statute, ordinance, regulation, or administrative rule that was allegedly violated by Pacific and for which Wolf was trying to blow the whistle, to his detriment. The complaint's allegations can thus not give rise to a whistleblower claim under the provisions of Florida law. This is no different than the situation presented in *New World Comm'ns. of Tampa, Inc. v. Akre,* 866 So. 2d 1231 (Fla. 2d. DCA 2004), where the court refused to apply the whistleblower statute to an FCC "news distortion policy" because, among things, the "FCC has never published its news distortion policy as a regulation with definitive elements and defenses." This is also akin to the facts in *Snow v. Ruden, McCloskey, Smith, Schuster, & Russell, P.A.,* 896 So. 2d 787 (Fla. 4th DCA 2000), where the Fourth District again affirmed the dismissal of a whistleblower claim by an attorney who claimed she was fired for reporting her supervisor's violations pursuant to Florida Bar Rules. The court concluded that the rules "do not flow from either a legislatively enacted statute, ordinance, or administrative rule." *Id.* at 791.

In opposition to Pacific's reliance on these cases, Wolf points to this district's opinion in *Padron v. BellSouth Telecomms., Inc.,* 196 F. Supp. 2d 1250 (S.D. Fla. 2002), which simply provides that a plaintiff must show "she opposed an unlawful employment practice which she reasonably believed had occurred." *Id.* at 1255. This case has no application here because Wolf's complaint has not alleged that he opposed an unlawful employment practice. All but one of the activities he invokes – conference room use which is obviously not an "unlawful employment practice"– never occurred, and Wolf does not plead to the contrary. These allegations are in stark contrast with

those at issue in *Padron*, 196 F. Supp. 2d at 1254 (unlawful employment practice was ongoing).  *See also Wood v. Cellco P'Ship.,* 2008 WL 220085, at *4 (M.D. Fla. Jan. 24, 2008) ("the plaintiff must establish that she complained of conduct that actually violates a law, rule, or regulation.").

Wolf again tries to get around this by alleging that violating the OCC Consent Decree would be "a violation of Federal law."  Wolf argues that violating the consent order is a violation of law because it would at the same time violate Federal law.  The statute he points to, 12 U.S.C 1818(b), simply provides for the authority to initiate cease and desist proceedings and issue orders requiring compliance but does not convert an agency the order by itself into a "law, rule or regulation."  Wolf nevertheless argues that the consent decree is "entered into under the authority of Section 1818 of the U.S. Code" and, therefore, that is the law that was being violated.  Yet, "entry" of an order is not the same as a law being "adopted," which applies to legislative or quasi-legislative enactments.  *See, e.g., Forrester v. John H. Phipps, Inc.,* 643 So. 2d 1109, 1112 (Fla. 1st DCA 1994) ("the phrase 'law, rule or regulation' refers to enactments of a legislative or administrative forum").

This type of end-run around the strict requirements of this statute was attempted and rejected in a recent case before the Eleventh Circuit, *Bush v. Raytheon, Co.,* 2010 WL 1427611, at *2-3 (11th Cir. Apr. 12, 2010).  The employee in that case tried to state a claim under the Florida whistleblower act without pointing to a specific "law, rule or regulation" that had been violated in spite of the established principle that the "Act does not apply to violations of 'public policy' because 'the legislature did

not intend to create a cause of action for what essentially amounts to an internal and personal dispute between [a plaintiff and his] employers.'" *Id.* (quoting with approval *Forrester,* 643 So. 2d at 1111).  The employee tried to argue around this defect by arguing that violations of a government contract – the "law, rule or regulation" relied upon – would have in turn violated federal law, the Federal False Claims Act.  But this argument failed because the employee had not actually based his opposition to any particular violation of that statute.  *Id.*  The failure to point to any specific codified "law, rule or regulation" was fatal.

So too is Wolf's effort here.  No matter how Wolf tries to couch it for his claims to survive, an order simply is not a statute, ordinance, rule, or regulation, and nothing in section 1818 changes that.  Section 1818 does not make the OCC consent order/decree a "statute, ordinance, rule, or regulation" that is "adopted." Section 1818 does not provide for "adopting" the consent decree by any legislative of quasi-legislative process.  Section 1818 simply provides for a judicial, not legislative or quasi-legislative, enforcement process, and therefore does not result in an order being "adopted." Section 1818 creates an administrative enforcement procedure, not a generalized "law, rule, or regulation."

With respect to Wolf's Allegations involving Andres Basquerizo, the complaint also fails to allege a viable and plausible whistleblower claim under Florida law.  One obvious problem with the complaint's allegations regarding Basquerizo is that Wolf is seeking to hold Pacific liable for his disagreements with the "activity, policy, or practice of" BP, Pacific's majority shareholder, or BCE, BPE's owner.  Neither entity is Wolf's

employer under Florida law.  Wolf did not sue BPE because the Act only prohibits retaliation by an "employer," which as Wolf alleges, in his case was Pacific. (Compl. ¶4).  Wolf also has no direct claim against BCE, which Wolf alleges is an instrumentality of a sovereign, Ecuador (Compl. ¶11).  Neither entity was Wolf's "employer," and thus, to the extent he objected to any "activity, policy, or practice" they suggested, that objection cannot form the basis for his claim as a matter of law.  *See, e.g., Molenda v. Hoechst Celanese Corp.,* 60 F. Supp. 2d 1294, 1300 (S.D. Fla. 1999) (recognizing acts by a separate entity are not within the purview of an employee's whistleblower claim).

Further, Wolf's attempt to invoke the "single employer" doctrine also fails.  Florida courts have specifically rejected extending the Whistleblower Act's definition of "employer" to include acts by employees of an entity that did not employ the plaintiff.  *See, e.g., Ruiz v. Aerorep Group Corp.,* 941 So. 2d 505, 507 (Fla. 3d. DCA 2006) (affirming dismissal for failure to state a cause of action).  The Third District's decision in *Diaz v. Impex of Doral, Inc.,* 7 So.3d 591 (Fla. 3d. DCA 2009), does not undermine this principle.  In that case, the plaintiff alleged acts that made the targeted entity his true employer, such as receiving a paycheck from and doing work for that entity, a common president and secretary, a belief the companies were the same entity, and a common manager.  Similar allegations are no where to be found in this complaint.

To the contrary, unlike *Diaz,* Wolf affirmatively unambiguously alleges that Pacific was his employer.  (Compl. ¶ 4). Wolf does not allege a common president or

secretary, common management, or receipt of a salary from BPE.  Wolf nowhere alleges he had any title in BPE or BCE.  He does not allege he received compensation from BPE or BCE.  He does not allege he attended any BPE or BCE board meetings on behalf of Pacific.  He does not allege he ever took any action on behalf of BPE or BCE. And without such allegations, the complaint does not plausibly state a whistleblower claim against Pacific, especially considering that Wolf was Pacific's President at the relevant time period.

Wolf nevertheless basis his claims on the contention that Basquerizo was the "most powerful board member" at Pacific, and therefore wielded the power to control his employment.  That, however, is a naked legal conclusion without factual support in the complaint, nor is it enough to distinguish the corporate formalities involved. Indeed, Wolf's alleges someone who had nothing to do with Basquerizo's "illegalities" asked for his resignation, Prado (Compl. ¶ 51). Wolf also purports that because he is suing under "remedial" statutes, the Court should ignore the realities of his employment by Pacific and the law governing the relationship among corporate affiliates. Wolf fails to justify that position, because his allegations show that: a) Basquerizo was on Pacific's board, just like Wolf (Compl Ex. 1); b) Campana worked for a separate entity and had no power to control Wolf's employment (¶ 37); and c) Wolf's perception of Basqerizo's power is objectively without basis (See e.g. Compl. Ex. 2, at §§ 2.1, 2.11, 2.14; 12 C.F.R. §§ 5.51(b); 5.51(c)(6)(ii); 5.51(d); 5.51(e)(4).).

Further, Wolf incorrectly argues that corporate formalities should be ignored because Wolf sued under the whistleblower statutes, which he alleges are analogous to civil rights laws.  Regardless of the nature of the relief sought, a plaintiff must allege

a basis upon which to overcome corporate formalities.  *See McKenzie,* 834 F. 3d at 934. In contrast to case where joint liability was found to be viable, Wolf never alleges he thought he worked for anyone other than Pacific, or that he was treated as anything but the President (or CFO) of Pacific while working there.

Finally, Wolf's conference room use allegations do not support a claim. This facially implausible and trivial allegation cannot support his cause of action.  In paragraph 35 of the Complaint, Wolf alleges that Pacific "at that time was not in compliance with the safeguard rules and opt-out notices allowing customers to refuse to have their information shared with affiliated parties such as BPE and BCE, as per recent OCC Examinations and Consent Decree." (Compl. ¶ 35).  Wolf allegedly was concerned "PNB could not guarantee the privacy of its clientele."  The problem is that Wolf fails to state how the allegation constitutes a violation of the consent order – even assuming the OCC Consent Order qualifies as a "law, rule, or regulation."  Wolf does not allege how permitting access to conference rooms, in a building that takes up five floors and a half-block of Miami's Brickell Avenue, somehow affects "guarantee[ing] the privacy of Pacific's clientele." Wolf also cannot claim his characterization includes the underlying regulations.  The privacy regulations at issue deal specifically with "non public information," which is defined as "personally identifiable information," and "any list, description, or other grouping of customers . . . that is derived using any personally identifiable information that is not publicly available." 12 C.F.R. § 40.3(n).  Wolf's allegations do not state how access to conference rooms, or even unspecified "facilities," would have led to access to that specific information.  Indeed, Wolf does not even allege

such information was kept in conference rooms or within reach at the unspecified "facilities." Wolf cannot benefit from inferences that he does not plead or are unsupported by the facts he does plead. *See Iqbal,* 129 S. Ct. at 1949.

Therefore, these whistleblower allegations fail as a matter of law under any of the provisions of the Florida statute. Counts I and II should be dismissed.

### C.     *Counts III and IV - 12 U.S.C. § 1831j*

Wolf's current complaint also seeks to invoke federal whistleblower provisions against Pacific. Counts III and IV rely upon Title 12, Section 1831j:

> No insured depository institution may discharge . . . any employee . . . because the employee (or any person acting pursuant to the request of the employee) provided information to any Federal banking agency or the attorney general regarding . . . a possible violation of any law or regulation . . . by the depository institution or any director, officer, or employee of the institution.

12 U.S.C. §1831j(a)(1). Wolf must thus allege that he was an employee of an insured depository institution who was discharged for reporting a possible violation of any law or regulation to a Federal banking agency, and that the possible violation was by the institution, or a director, officer, or employee of the institution. Wolf's allegations here also fail because they do not meet the requirements for a claim under Section 1831j.

Wolf's allegations do not plausibly show he was terminated for reporting possible violations of law to the Federal government. Wolf's allegations show he was concerned with the operations and views of entities other than Pacific. Wolf claims he was terminated because he opposed attempts by Basquerizo to "use[] his power and authority over Wolf and PNB to urge Wolf to engage in various illegalities." (Compl. ¶29). In paragraph 44 of his Complaint, Wolf summarizes the "possible violations" he

reported as: (1) BCE employees' use of conference rooms at Pacific, suggested by Andres Basquerizo, a Pacific Board member who also works for Pacific's parent company (¶ 35); (2) a proposal from Basquerizo to hire an Ecuadorian national Wolf alleges was a "convicted felon in Ecuador" (¶42); (3) a proposal from a different Board member of BCE – but not Pacific – to "reconstitute some Ecuadorian business on the books of PNB" (¶37), transmitted to Wolf by Basquerizo; and (4) Basquerizo's request for an "illegal" salary through Pacific over the amount he was allowed to earn in Ecuador (¶30). Wolf alleges that he "sent PNB's BSA/AML department . . . and email regarding" these allegations, and that he copied "each member" of Pacific's board "except Basquerizo." (¶44).

The statute he tries to invoke, however, requires a report to a Federal banking agency; therefore, Wolf cannot rely upon the "email" to support a claim under Section 1831j. *See Lippert v. Cmty. Bank, Inc.,* 438 F.3d 1275, 1280 (11th Cir. 2006). Wolf claims that "a few days before his termination, PNB gave appropriate notice to federal regulators as a result of Wolf's complaints." (¶45). The statute requires a sufficient connection to the filing, and an internal investigation or its results do not support a claim under Section 1831j. But Wolf does not allege that Basquerizo, the alleged mastermind, was even aware of Pacific's "providing information" to Federal regulators. Wolf's allegations do not provide the necessary connection between the possible and the plausible, which he is required to plead. The facts Wolf presents invite an impermissible inference regarding his termination. The chain of causation, without

linking and pleading particular facts (as opposed to bare legal conclusions), is too remote as a matter of law.

And even if we were to look past that material omission in the facts alleged, Wolf then runs into a bigger problem.  It is well established in federal whistleblower cases that a plaintiff does not engage in protected activity by disclosing violations of law as part of his job responsibilities.  *See, e.g., Sasse v. United States Dep't of Labor,* 409 F.3d 773, 789-90 (6th Cir. 2005) (affirming dismissal of claim as a matter of law where alleged whistleblower had job function of investigating violations of law); *Huffman v. Office of Personnel Mgmt.,* 263 F.3d 1341, 1351-53 (Fed. Cir. 2001) (whistleblower disclosures not protected to extent they were part of normal job responsibilities); *cf., Garcetti v. Ceballos,* 547 U.S. 410 (2006) (public employee statements criticizing state officials not protected from retaliation provisions of first amendment where complaining employee's job function involved making such disclosures).

The complaint here is alleging in essence that the bank President, Wolf, was shielding the bank from efforts by others to breach the consent decree with OCC or violate some banking regulations or statutes, which Wolf successfully prevented.  Wolf was the President of the bank.  If anyone was responsible for ensuring compliance with federal banking regulations *it was Wolf*.  His fiduciary duty to the bank included doing what it is he is now alleging to have done.  He is thus not the type of "employee" that whistleblower statutes like section 1831j were addressing because his actions are not engaging in protected activity.  His actions were in furtherance of his own fiduciary obigations as part of his job responsibilities.  And if, as he alleges, his efforts

culminated in Pacific ultimately making adequate disclosures to banking officials, as required by law, that does not translate into Wolf satisfying the strict requirements of this particular whistleblower statute which strictly requires that *Wolf himself* provide triggering information to a federal banking agency or the Attorney General.

That is why federal law is settled, in this circuit and elsewhere, that internal complaints by bank officials or employees do not give rise to 1831j liability. *See Lippert,* 438 F.3d at 1280 ("internal reports are not protected disclosures under § 1831j(a)(1)"); *Hill v. Mr. Money Finance Co.,* 2009 WL 279086, at \*10-11 (6th Cir. Feb. 6, 2009) (following *Lippert* and holding that "[s]tatutory language is clear that retaliation must follow the provision of information to a specified federal authority" nd affirming dismissal of banking officer's whistleblower claim under § 1831j that was premised on threatening to report disclosures to federal officials).

Here Wolf has not alleged that he personally, or through a conduit that he directed and controlled, made contact with any federal banking official or the Attorney General in connection with ongoing violations of banking laws at Pacific. He pleads, instead, that he directed that the bank comply with its obligations under the law and prevented others who were not so inclined from doing otherwise. He is thus alleging that he did his job as a senior bank official. He is thus *not* a whistleblower who engaged in statutorily protected activity for purposes of § 1831j. A cause of action, therefore, does not lie on these allegations, as in the case the Sixth Circuit affirmed in *Hill.* Wolf must face the same fate here.

We could stop here to find that Wolf's factual allegations, even if assumed true, fail to state a cause of action under this federal statute.  But there is yet another reason why Wolf's claims fail.  Wolf's Complaint does not allege a "possible violation . . .of any law" by Pacific or any director, officer, or employee of Pacific.  Wolf's alleged "possible violations," which he allegedly opposed, were not possible violations of any law by Pacific or a director, officer, or employee of Pacific.  Rather, Wolf's allegations show that suggestions for possible actions were funneled to Wolf by others and rejected.  And the one that was not rejected – use of conference rooms by BCE employees – does not violate the law as to Pacific.  Wolf alleges that "Basquerizo used his power and authority over Wolf and PNB to urge Wolf to urge Wolf to engage in various illegalities." (¶29).  Wolf says he opposed other Basquerizo suggestions regarding bank operations.  But each was a proposal by another entity to do something, not Pacific.  The Campana plan was proposed by a board member of an entity twice removed from Pacific, BCE. (¶37).

Accordingly, for all these reasons a claim under section 1831j has not been properly and factually supported in the complaint.  Given the failure to allege a viable claim under this statute through any theory, Counts III and IV should be dismissed with prejudice.

### D.    *Counts V and VI - 12 U.S.C. § 5328*

Counts V and VI of Wolf's Complaint invoke of Title 31, Section 5328, which states that it "shall not apply with respect to any financial institution. . .which is subject to Section 33 of the Federal Deposit Insurance Act." 31 U.S.C. § 5328(e).

Section 33 of the Federal Deposit Insurance Act is codified at Section 1831j of Title 12 of the U.S. Code. See 31 U.S.C. § 5328 (noting that the "References in text" to "Section 33 of the Federal Deposit Insurance Act . . .is classified to section 1831j of Title 12, Banks and Banking.").

Wolf's allegations seek to avoid this exception. Wolf alleges that Pacific is a "financial institution" under Section 5328, but then claims that Pacific is a "banking agency" under Section 1831j. (Compl. ¶ 5). That is not viable. Section 1831j does not define "banking agency," and instead defines "Federal banking agency," which "means the Corporation [FDIC], the Board of Governors of the Federal Reserve System, the Federal Housing Finance Board, the Comptroller of the Currency, and the Director of the Office of Thrift Supervision." 12 U.S.C. § 1831j(e). Pacific is not any of those entities. Rather, Pacific is an "insured depository institution" under Act, because it is an FDIC member. See 12 U.S.C. 1831j(a)(1); Compl. Ex. 1 (indicating Pacific is a "Member" of the FDIC).

Accordingly, under Section 5328's plain language, it "shall not apply with respect to" Pacific. As a result, Section 5328 is inapplicable to this case, and Counts V and VI should be dismissed with prejudice because no amendment to the complaint can cure these deficiencies as a matter of law.

### III. CONCLUSION

As set forth herein, each of Wolf's claims in his pending complaint should be dismissed. Ordinarily that may give rise to dismissal without prejudice to see if amended allegations, as per Rule 15, may overcome the pleading deficiencies cited.

After *Twombly* and *Iqbal,* however, that is not necessarily true any more.  If the failures are so material that a district court can find that no amendment is possible, then a district court may dismiss a complaint with prejudice even on the first complaint.  *See Jacobs v. Tempur-Pedic,* 2010 WL 4880864 (affirming denial of leave to vacate final judgment entered on dismissal of initial complaint).

We need not follow this eye-opening application of the federal rules post-*Twombly* here.  The pending complaint is not Wolf's first attempt at stating a cause of action.  It is in effect his third amended complaint.  The initial complaint was unilaterally dismissed in favor of an amended complaint.  That amended complaint was again dismissed, but that time on order of the presiding state court judge.  A second amended complaint followed, first filed in state court, which was dismissed for a third time and became the pending complaint in this federal action.  Wolf has thus had more than sufficient opportunities to state a claim.  He has not done so.  It is thus abundantly clear that further amendments will be futile, not because of any poor lawyering on counsel's part, but on the mere fact that Wolf is simply not in a position to state a whistleblower claim, whether under Florida or federal law.  It is simply not plausible on these facts, post-*Twombly,* for a bank President to be deemed a whistleblower, where no specific laws or regulations were cited, where no actual violations of any law are alleged to have occurred, where indeed he repeatedly pleads that his actions prevented the bank from violating the law, where no actual direct communications with federal regulatory officials are alleged to have taken place prior to his termination, and where much of the alleged illegal conduct or retaliatory actions

were taken by persons outside of the bank's corporate employment structure. In other words, this is not a failure of careful pleading; it is a failure to have any claim at all. Accordingly, Rule 12(b)(6) requires the dismissal of the complaint with prejudice.

For the foregoing reasons, it is hereby RECOMMENDED that:

1.   Defendant's Motion to Dismiss be **GRANTED** in its entirety.

2.   All Counts of the complaint should be **DISMISSED** with prejudice and that the case be CLOSED.

3.   The parties shall have five (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of any issue included in the Report and shall bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1); S.D. Fla. Local Mag. J. R. 4(b).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 28th day of December, 2010.

/s/   *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge